#### IN THE UNITED STATES DISTRICT COURT
#### FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **LIVE FACE ON WEB, LLC,**<br>a Pennsylvania company,<br><br>      Plaintiff,<br><br>vs.<br><br>**FIVE BORO MOLD SPECIALIST INC.,**<br>a New York Corporation,<br><br>**MARTY KATZ,**<br>an individual,<br><br>      Defendants. | Case No.: _____<br><br>**JURY TRIAL REQUESTED** |

### COMPLAINT

Plaintiff Live Face on Web, LLC, through its undersigned counsel, for its Complaint against the Defendants listed above and alleges as follows:

### I.   THE PARTIES

1. Plaintiff, Live Face on Web, LLC ("LFOW"), is a Pennsylvania limited liability company with its principal place of business at 1300 Industrial Boulevard, Suite 212, Southampton, PA 18966.

2. Upon information and belief, Defendant Five Boro Mold Specialist Inc., is a New York corporation with a principal place of business at 1565 Hendrickson St., Brooklyn, New York, 11234.

3. Upon information and belief, Defendant Marty Katz is a resident of New York and the owner and/or president of Five Boro Mold Specialist Inc.

## II. JURISDICTION AND VENUE

4. This action arises under the U.S. Copyright Act (17 U.S.C. §501 et seq.), and thus this Court has federal question jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

5. As fully set forth herein, Five Boro Mold Specialist Inc. and Marty Katz (collectively Defendants) have used and distributed LFOW's software and/or infringing derivative works thereof, which are the subject of U.S. Copyright Registrations.

6. This Court has personal jurisdiction over the Defendants because as the Defendants have conducted business in, and have had continuous and systematic contacts with the State of New York and this District.

7. This Court has personal jurisdiction over Marty Katz because, upon information and belief, he is a resident of New York who is conducting business in and having continuous and systematic contacts with the State of New York and this District.

8. Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b), (c) and 1400(a) in that a substantial part of the events or omissions giving rise to the claims herein occurred in this District, and Defendants are located in this District.

## III. PLAINTIFF'S BUSINESS AND COPYRIGHTED TECHNOLOGY

9. LFOW is a developer and owner of "live person" software, which is an original work of authorship independently created by LFOW ("LFOW Software").

10. The LFOW Software allows a company to display a video of a "walking" and "talking" personal host who introduces a website to an online visitor. The personal host is, in effect, a web spokesperson for the specific company for whom the video has been created. Typically the web spokesperson explains a company's products and/or

services and directs a visitor's attention to a particular product or aspect of the website. The LFOW Software is representative of LFOW's advertising idea; LFOW (and its customers) advertises services and solicits business through the use of a website spokesperson, which is typically tailored to specific goods and services found on the associated website.

11.    The LFOW Software enables a company to customize and dynamically modify settings and functionality of the web spokesperson. By way of example, a customer utilizing the LFOW Software can: (a) manipulate the positioning of the web spokesperson on its website and select between static, relative or dynamic positioning features; (b) adjust the delay between the time an online visitor enters the website and the start time of the web spokesperson's presentation; (c) select the number of times a video presentation plays for each particular visitor; and (d) select "click on me" functionality that directs a user to a predetermined page or section of the website which promotes goods or services and/or reinforces the image and brand of the customer.

12.    The LFOW Software seeks to enhance a web site by using a real spokesperson to capture, hold and prolong the attention of the average online visitor, enhancing the ability of the website to advertise specific goods and services. This technique has a direct positive impact on sales and/or the brand, public image and reputation of any company that has an online presence.

13.    Generally speaking, the LFOW Software can be implemented by LFOW's customers by modifying the HTML code of the LFOW customer's website. An HMTL script tag is embedded in the HTML code of the LFOW customer's website, which links the LFOW customer's website to a copy of the LFOW Software. An LFOW customer has

the option of storing the copy of the LFOW Software on the same webserver(s) as the customer's website, or storing the copy of the LFOW Software on a different webserver(s) than the website. Many of LFOW's customers choose to have the copy of the LFOW Software stored on LFOW's webservers.

14. Regardless of the particular webserver(s) where the LFOW Software is stored, the functionality and result is the same. When a web browser is directed to a website linked to the LFOW Software, the embedded HTML script tag is read by the web browser and causes the automatic distribution of a copy of the LFOW Software. The LFOW Software is automatically saved by the web browser into cache, and/or a hard drive(s), and loaded into computer memory and/or RAM (random access memory). As a result of the distribution of the LFOW Software, the specific web spokesperson video is automatically launched and displayed to advertise on the associated website.

15. Because the LFOW Software is written in JavaScript, it is possible to view the actual source code of the LFOW Software through a web browser. Anyone who accesses a website that has implemented the LFOW Software has access to the software. Additionally, any website visitor can download the LFOW Software and view it on virtually any text viewer or editor software (such as Word®, Notepad, etc.).

16. The LFOW Software is licensed to customers for a license fee by LFOW, which also receives fees for other services.

17. The LFOW Software is also subject to the terms and conditions of LFOW's End User License Agreement ("EULA"). Since at least October 2007, LFOW has included the web address where the EULA can be found, thus anyone who accessed any version of the LFOW Software since that time had notice of the EULA.

18. LFOW has registered the LFOW Software. Pertinent to this action, on December 20, 2007, LFOW duly registered the copyright in the LFOW Software version 7.0.0, prior to the publication of version 7.0.0, in the United States Copyright Office, as evidenced by the certificate of registration for TXu001610441, which was issued by the Register of Copyrights. A true and accurate copy of the certificate of registration is attached hereto as Exhibit A, and a true and accurate copy of the deposit work for TXu001610441 is attached hereto as Exhibit A1.

## IV.    DEFENDANTS' COPYRIGHT INFRINGEMENT

19. Upon information and belief, Defendants own, and/or operate and/or control the websites www.fiveboromoldspecialist.com and www.manhattanmoldremoval.com ("Defendants' websites"). A copy of the HTML source code for the Defendants' website is found at Exhibit B and B1, respectively.

20. Defendants' websites advertise and promote the products and/or services of Defendants.

21. Upon information and belief, Defendants have used a web spokesperson video to promote Defendants' products and/or services.

22. Upon information and belief, in order to display the web spokesperson video on Defendants' websites, Defendants used and distributed, without permission, and therefore infringed upon, the infringing version of the LFOW Software.

23. Upon information and belief, Defendants have the right and ability to modify their own websites or to have their websites modified on Defendants' behalf.

24. Upon information and belief, to implement and distribute the infringing version of the LFOW Software, the Defendants' website

www.fiveboromoldspecialist.com was modified by or on behalf of Defendants to include the following website source code and/or text, shown in Exhibit B: http://tweople.com/client/main_vsp.js?swf=http://tweople.com/client/main_vsp.swf&amp;flv=http://flash.yourvideopartner.com/files/complete/1007728B.flv&amp;start=normal&amp;close=shrink&amp;play_when=1&amp;align_right=true&amp;show_loading=yes&amp;width=520&amp;height=430&amp;vlm=80&amp;x_off=340.

25.     This modification in Paragraph 24, above, links the Defendants' website to the file "main_vsp.js", an infringing version of the LFOW Software, which was stored for Defendants on the webserver(s) of www.tweople.com. A copy of "main_vsp.js" is found at Exhibit C.

26.     Upon information and belief, Defendants also copied and stored an infringing version of the LFOW Software on the webserver(s) for www.manhattanmoldremoval.com.

27.     Upon information and belief, to implement and distribute the infringing version of the LFOW Software, the Defendants' website www.manhattanmoldremoval.com was modified by or on behalf of Defendants to include the following website source code and/or text, shown in Exhibit B: http://www.manhattanmoldremoval.com/main_vsp.js?swf=http://www.manhattanmoldremoval.com//smain_vsp.swf&flv=http://www.manhattanmoldremoval.com/1007729.flv&start=normal&close=shrink&play_when=1&align_right=true&show_loading=yes&width=600&height=450&vlm=80&x_off=310.

28.     This modification in Paragraph 27, above, links the Defendants' website to the file "main_vsp.js", an infringing version of the LFOW Software, which was stored on

6

Defendants webserver(s). A copy of "main_vsp.js" is found at Exhibit C1, and is substantially similar to the main_vsp.js file also found at Exhibit C.

29. As a result of the modifications to the Defendants' websites referenced above, when a web browser retrieves a page from the Defendants' websites, a copy of the infringing version of the LFOW Software is distributed by Defendants to the website visitor and stored on the visitor's computer in cache, memory and/or its hard drive. Accordingly, each visit to the Defendants' websites is a new act of copyright infringement.

30. The infringing versions of the LFOW Software, shown at Exhibit C and C1, are substantially similar to the LFOW Software, and include one or more instances of "LFOW," which is a reference to LFOW. The infringing versions of the LFOW Software also include the unique prefixes "lf_," which were arbitrarily chosen by LFOW to mark its code and indicate LFOW's unique and original code. There is no functional value to the use of the letters "LFOW" or "lf_" in the LFOW Software. Instead, these were both chosen as references to LFOW and its code.

31. The web spokesperson video that launches on Defendants' websites is a result of Defendants' distribution of the infringing versions of the LFOW Software, which advertises and promotes the products and/or services of Defendants, encouraging the website viewer to purchase and/or use Defendants' products and/or services, thereby providing a monetary benefit to Defendants. Thus, Defendants' copyright infringement of the LFOW Software is in their advertising, and the infringement is for the purpose of advertising their products and/or services.

32. Defendants intend for a copy of the infringing version of the LFOW Software to be distributed to website visitors in their advertising, as this is necessary for the video spokesperson to appear on the screen of the website visitor. The volitional distribution of the infringing version of the LFOW Software by Defendants to their website visitors is seamless and transparent for the website visitors, who are able to view the video spokesperson advertising Defendants' products and/or services by virtue of receiving the copy of the infringing version of the LFOW Software.

33. Defendants profit directly from and have a direct financial interest in the infringement, because the use of the infringing version of the LFOW Software allows Defendants to more effectively promote and sell their products and/or services by capturing, holding and prolonging the attention of the average online visitor, providing a direct positive impact on sales and/or the brand, public image and reputation of Defendants.

34. The infringing version of the LFOW Software is a sales and advertising tool for Defendants to generate revenues and profits and, upon information and belief, the use and misuse of the infringing version of the LFOW Software by Defendants did in fact generate revenues and profits for Defendants, as more fully described below.

35. Defendants unlawfully and continuously used the infringing version of the LFOW Software on unauthorized Web Page(s), for which Defendants did not pay applicable license fees and video production fees to LFOW.

36. The unlawful use, reproduction and/or distribution of the infringing version of the LFOW Software on the Defendants' websites constitutes infringement of

LFOW's intellectual property rights, including, without limitation, LFOW's registered copyrighted material(s).

37. As the owner of registered copyright material in the LFOW Software, LFOW has an interest in protecting its rights against such intellectual property infringement.

38. As a result of the foregoing conduct of Defendants, LFOW has suffered significant harm and loss.

39. Upon information and belief, Defendants actively induced end users to visit their website(s), and thereafter distributed the infringing version of the LFOW Software to end users (e.g. website visitors) numerous times. The actual number can only be ascertained through discovery.

40. Defendants have caused, enabled, facilitated, and/or materially contributed to the infringement by, inter alia, distributing copies of the accused software to each visitor via the Defendants' website(s) and refused to exercise their ability to stop the infringement made possible by the modification and continuous operation of their website(s).

41. As the owner of the registered copyright in the LFOW Software, LFOW has an interest in protecting its rights against such copyright infringement.

42. Under the authority of 17 U.S.C. § 504, LFOW is entitled to elect whether to recover statutory damages against Defendants for each act of copyright infringement.

43. Where Defendants initiated or continued the infringing conduct while aware of the infringement, these actions were the result of reckless disregard for, or

willful blindness to LFOW's rights, and therefore constitute volitional conduct and willful infringement.

## COUNT ONE

## Copyright Infringement

44. LFOW incorporates by reference the averments contained in the preceding paragraphs above, as if set forth fully herein.

45. Count One is an action under 17 U.S.C. § 501 for direct, indirect and/or vicarious infringement of registered copyright(s) as against the Defendants named in this Complaint.

46. LFOW is the owner of valid copyright registration TXu001610441.

47. LFOW has complied in all respects with the provisions of the Copyright Act, 17 U.S.C. §§ 101 et seq., and all other laws governing copyright to secure the exclusive rights and privileges in and to the copyrights of the items identified herein.

48. The infringing version of the LFOW Software used and distributed by Defendants is at least substantially similar to the LFOW Software protected by TXu001610441.

49. Defendants, through their agent(s), vendor(s), officer(s), and/or employee(s), modified Defendants' websites to cause the copying,, use and distribution of the infringing version of the LFOW Software.

50. The past and ongoing copying, use and distribution of the infringing version of the LFOW Software by Defendants results in actual damage to LFOW, including but not limited to the loss of licensing revenue lost as a result of Defendants' infringement.

51.     Defendants intentionally induced and/or encouraged direct infringement of the LFOW Software by distributing the infringing version of the LFOW Software via their website(s) and/or seeking out the LFOW Software in order to use it on their website(s).

52.     Defendants profited from and have a direct financial interest in the infringement, because the use of the infringing version of the LFOW Software allows Defendants to more effectively promote and sell their product(s) and/or service(s) on their own website(s) by capturing, holding, and prolonging the attention of the average online visitor, providing a direct positive impact on sales and/or brand, public image and reputation of Defendants.

53.     Because Defendants own, operate and/or control their website, Defendants also have the right and ability to supervise and control the infringement and infringer by virtue of their ownership and control of their own websites, but failed to do so.

54.     Where Defendants initiated or continued the infringing conduct with knowledge of the infringement, these actions were the result of reckless disregard for, or willful blindness to LFOW's rights, and therefore constitute willful infringement.

55.     Unless Defendants are restrained and enjoined from their unauthorized use and distribution of the LFOW Software, these injuries will continue to occur.

56.     Irreparable harm and injury to LFOW are imminent as a result of Defendants' conduct and LFOW is without an adequate remedy at law.

57.     Pursuant to 17 U.S.C. § 502(a), LFOW is entitled to an injunction restraining Defendants, their employees and agents, and all other persons acting in concert with Defendants, from engaging in any further improper acts.

58.     Pursuant to 17 U.S.C. §§ 503(a) and 503(b), LFOW is entitled to an order impounding the infringing articles and the means by which such infringing articles were produced and/or reproduced.

59.     Pursuant to 17 U.S.C. § 504, LFOW is also entitled to recover actual damages and any profits of Defendants, or, alternatively, to recover statutory damages of up to $150,000 for each work infringed.

60.     Pursuant to 17 U.S.C. § 505, LFOW is entitled to an award of attorneys' fees and costs.

WHEREFORE, LFOW asks this Court to enter preliminary and final orders and judgments as necessary to provide LFOW the following requested relief:

a)  Finding Defendants liable for copyright infringement by virtue of Defendants' past and ongoing unauthorized use of LFOW's Software;

b)  Finding Defendants' copyright infringement to be voluntary and an intentional violation of Defendants' known duties, and therefore willful;

c)  Finding LFOW to have suffered, and to continue suffering harm that is irreparable and otherwise without an adequate remedy at law;

d)  A permanent injunction under 17 U.S.C. §§502 and 503, enjoining Defendants from further infringement, including but not limited to the cessation of operation of Defendants' website(s);

e)   An award of damages against Defendants under §504;

f)   An award under 17 U.S.C. § 505 allowing recovery of the full costs of this action, including LFOW's reasonable attorneys' fees and costs; and

g)   Such and other relief as the Court deems appropriate.

## JURY DEMAND

LFOW demands a jury trial on all issues so triable.

Dated:   June 19, 2015                             Respectfully submitted,

By:   s/ *Demetrios Pavlou*
DEMETRIOS PAVLOU, Esq.
New York Bar No. 4431631
dp@demetriospavlou.com
eservice@demetriospavlou.com
eservicedplaw@yahoo.com
lezo14@aol.com
lzlaws@aol.com
Law Offices of Leonard B. Zoftis
12030 Bustleton Avenue
Philadelphia, PA  19116
Phone: 267-969-3004 Fax: 267-969-3990
Attorneys for Plaintiff, Live Face on Web, LLC