UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

LIVE FACE ON WEB, LLC,

        Plaintiff,

  -v-                                                  No.  15 CV 4779-LTS-SN

FIVE BORO MOLD SPECIALIST INC.,
MARTY KATZ, and JAMES COUTURE,
et al.

        Defendants.

-------------------------------------------------------x

## MEMORANDUM OPINION AND ORDER

        Plaintiff Live Face On Web, LLC ("Plaintiff" or "Live Face") alleges that, after it filed a copyright infringement action against Five Boro Mold Specialist Inc. ("Five Boro") and its owner, Marty Katz (collectively, for the purposes of this opinion, "Defendants"), Defendants and their public relations consultant, James Couture, a named defendant who is not a party to the instant motion practice, published defamatory content about Plaintiff on the Internet.  Plaintiff filed an Amended Complaint (docket entry no. 90[1] ("Am. Compl.")) asserting a defamation claim against Defendants and Couture.  The Court has jurisdiction of this action pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction of the defamation claim pursuant to 28 U.S.C. § 1367(a).

        Before the Court is a motion to dismiss Plaintiff's defamation claim against Five

---

[1]    The Amended Complaint was originally filed on January 8, 2016 as docket entry no. 51, but was re-filed on April 5, 2016 at the Court's request because the original filing was not signed by the attorney who filed it.

Boro and to dismiss both the defamation and copyright infringement claims asserted against Katz in his individual capacity.  (See docket entry no. 57.)  The Court has considered all of the parties' submissions carefully.  For the reasons set forth below, Defendants' motion to dismiss is granted as to the defamation claim against Five Boro and Katz, and denied as to the copyright claim against Katz.

BACKGROUND

The facts that follow are drawn from the Amended Complaint and are assumed to be true for the purposes of this motion practice.

Live Face makes and sells software that creates customized online virtual spokespersons for business websites.  (Am. Compl. ¶¶ 14-16.)  It registered a copyright for this technology in 2007.  (Id. ¶ 22.)  In its Amended Complaint, Plaintiff alleges that Defendants Katz and Five Boro used Plaintiff's proprietary software on two Five Boro websites without permission.  (Id. ¶¶ 23-32.)  Plaintiff alleges that Katz is "the owner and/or president of Five Boro" and that "[Five Boro] and Katz own, and/or operate and/or control the [offending] websites."  (Id. ¶¶ 3, 23.)  Live Face has filed similar copyright infringement lawsuits against other businesses.  (Id. ¶ 56.)

Live Face alleges that, after it commenced this action, Defendants defamed Live Face by making statements about this and other litigation on a blog, on Twitter, on Facebook, in a Google+ post, and in a press release (together "the Publications").  (Id. ¶¶ 49-55, 59-62, 71-73.)  Among other statements, Plaintiff takes issue with the Publications' claims that:  "the filing of actions by [Live Face] to enforce its copyrights are 'frivolous,' and . . . [Live Face] was subjecting 'unsuspecting victims' to [its] 'legal wrath'"; "the lawsuits were filed against

'innocent small business clients'"; "[o]ne can only ascertain . . . that [Live Face] is doing nothing more than patent trolling for profits"; and "[t]he defendants in this particular instance are being subjected to what could be construed in many legal circles as barratry."  (Id. ¶¶ 53-55, 71-73, and Ex. O.)  Plaintiff alleges that "numerous other media outlets" picked up Defendants' press release, causing harm to Live Face's business and reputation.  (Am. Compl. ¶ 74 and Ex. P.)

DISCUSSION

"To survive a motion to dismiss [under Federal Rule of Civil Procedure 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted).  This requirement is satisfied when the factual content in the complaint "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id. (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007)).  A complaint that contains only "naked assertions" or "a formulaic recitation of the elements of a cause of action" does not suffice.  Twombly, 550 U.S. at 555.  In making its Rule 12(b)(6) determinations, the court "may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference . . . and documents possessed by or known to the plaintiff and upon which [he] relied in bringing the suit."  ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007).  In deciding a Rule 12(b)(6) motion, a court assumes the truth of the facts asserted in the complaint and draws all reasonable inferences from those facts in favor of the plaintiff.  See Harris v. Mills, 572 F.3d 66, 71 (2d Cir. 2009).

The Defamation Claim

"Under New York law, the elements of defamation claim are (1) a defamatory statement of fact, (2) regarding the plaintiff, (3) published to a third party, (4) that is false, (5) made with the applicable level of fault, (6) causing injury, and (7) not protected by privilege." Egiazaryan v. Zalmayev, No. 11 CV 2670, 2011 WL 6097136, at *3 (S.D.N.Y. Dec. 7, 2011) (citing Dillon v. City of New York, 704 N.Y.S.2d 1, 5 (App. Div. 1st Dep't 1999)).  Although it is ultimately "the responsibility of the jury to determine whether the plaintiff has actually been defamed," Levin v. McPhee, 119 F.3d 189, 195 (2d Cir. 1997) (citing James v. Gannett Co., 40 N.Y.2d 415, 419 (1976)), "[w]hether particular words are defamatory presents a legal question to be resolved by the court[s] in the first instance." Celle v. Filipino Reporter Enterprises, Inc., 209 F.3d 163, 177 (2d Cir. 2000) (second alteration in original) (citing Aronson v. Wiersma, 65 N.Y.2d 592, 593 (1985)).  Among other questions of law, courts are charged with distinguishing between statements of fact, which may be defamatory, and expressions of opinion, which "are not defamatory; instead, they receive absolute protection under the New York Constitution." Tucker v. Wyckoff Heights Med. Ctr., 52 F. Supp. 3d 583, 597 (S.D.N.Y. 2014) (internal quotation marks and citations omitted).

New York courts have developed a three-step inquiry to distinguish potentially defamatory statements of fact from protected opinions.  First, a court asks whether the specific language at issue has a precise and readily understood meaning.  Second, the court determines whether the statements are capable of being proven true or false.  And third, the court evaluates whether the context of the statements signals to the reader that what is being conveyed is likely to be opinion rather than fact. Gross v. N.Y. Times Co., 82 N.Y.2d 146, 153 (1993).  These questions are designed to focus the inquiry on the core issue of "whether a reasonable [observer]

could have concluded that [the statements were] conveying facts about the plaintiff," Gross, 82 N.Y.2d at 152, so courts undertake "an analysis that begins by looking at the content of the whole communication, its tone and apparent purpose." Immuno AG. v. Moor-Jankowski, 77 N.Y.2d 235, 254 (1991).

Read in context, the statements in the Publications are non-actionable expressions of opinion rather than potentially defamatory statements of fact. The statements that Plaintiff's litigation is "frivolous" and that Plaintiff subjected "'unsuspecting victims' to [its] 'legal wrath'" are hyperbolic and imprecise. They may mean different things to different people, and they are not capable of being proven true or false because of their subjective, relative meanings. Courts have consistently found that statements calling into question the legitimacy of litigation are non-actionable statements of opinion. See, e.g., Scholastic, Inc. v. Stouffer, 124 F. Supp. 2d 836, 850 (S.D.N.Y. 2000) (statements that legal claims were "absurd," "ridiculous" and "meritless" were non-actionable statements of opinion that were neither precise nor capable of being proven false).

The statements that "[o]ne can only ascertain . . . that [Live Face] is doing nothing more than patent trolling for profits," that "[t]he defendants in this particular instance are being subjected to what could be construed in many legal circles as barratry," and that Plaintiffs' lawsuits are brought against "innocent small business owners," are arguably more "precise and readily understood" than other statements in the Publications, but are similarly not easily "proven true or false," and their context demonstrates that they are statements of opinion. See Gross, 82 N.Y.2d at 153. Moreover, the effect of the use of the rhetorical indicators "one can only ascertain" and "what could be construed" is that "the defendant's statements, read in context, are readily understood as conjecture, hypothesis, or speculation, [which] signals the

reader that what is said is opinion, and not fact." Levin, 119 F.3d at 197; see also Dworin v. Deutsch, No. 06 CV 13265, 2008 WL 508019, at *5 (S.D.N.Y. Feb. 22, 2008) ("Deutsch gives numerous indicators – e.g., 'it seemed to me . . .,' 'he didn't seem. . .' – which signal to readers . . . that what is being read . . . is likely to be opinion, not fact." (internal quotation marks and citations omitted).

Further, the media vehicles used to disseminate the Publications – a Wordpress blog, social media posts, and an unsigned press release complaining about litigation tactics – suggest to readers that they contain opinions, not facts, and they are written in an amateurish fashion.  Cf. Gross, 82 N.Y.2d at 152, 155-156 (reports in The New York Times that "appeared in the news section rather than the editorial or 'op ed' sections" were "written only after what purported to be a thorough investigation" and were therefore more likely to be treated as facts). These factors further indicate that an ordinary reader would understand the statements at issue to be opinion, not fact.

For these reasons, Live Face's defamation claims as against Five Boro and Katz fail as a matter of law and are dismissed.

Live Face's Copyright Claim Against Marty Katz

Defendant Katz also moves to dismiss the copyright claim against him for failure to state a claim.  This aspect of the motion is denied because Plaintiff's allegations are sufficient, at the pleading stage, to sustain a copyright claim against Katz under the theory of vicarious infringement.  A corporate officer can be "held liable under a theory of vicarious infringement where he profit[s] from direct infringement while declining to exercise a right to stop or limit it." Warren v. John Wiley & Sons, Inc., 952 F. Supp. 2d 610, 619 (S.D.N.Y. 2013) (alteration in

original) (internal quotation marks and citations omitted). The allegations of infringing conduct against Five Boro and Katz are identical. Plaintiff further alleges control of Five Boro and profit by Katz that support plausible inferences that Katz profited from infringement by Five Boro, had the right as owner and/or president to stop Five Boro from engaging in infringement, and declined to exercise this right. Taken together, these allege the necessary control to support vicarious liability. Although Live Face does not specifically allege that Katz had knowledge of infringement by Five Boro, the doctrine of vicarious liability "does not include an element of knowledge or intent on the part of the vicarious infringer." Arista Records LLC v. Usenet.com, Inc., 633 F. Supp. 2d 124, 156 (S.D.N.Y. 2009). Therefore, Katz's motion to dismiss the copyright claim is denied.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss Plaintiff's defamation claims (Count Two) as against Five Boro and Katz is granted. The motion is denied insofar as it seeks dismissal of Plaintiff's copyright claim against Katz.

This Memorandum Opinion and Order resolves docket entry number 57.

The final pretrial conference for this action is scheduled for **October 28, 2016** at **12:00 p.m**. The parties must confer and make submissions in advance of the conference as set

forth in the Pre-Trial Scheduling Order (docket entry no. 22).

SO ORDERED.

Dated: New York, New York
April 28, 2016

 /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge